(No. 6138.   July 12, 1934.)

CHARLES M. SMITH, Respondent, v. WASHBURN–WIL-
SON SEED COMPANY, a Corporation, Appellant.

[34 Pac. (2d) 969.]

A. L. Morgan, for Appellant.

Murray Estes, for Respondent.

WERNETTE, J. — This is an action for damages for breach of contract. On January 13, 1933, respondent, Charles M. Smith, and appellant, Washburn-Wilson Seed Company, entered into a written contract for the growing of peas. Appellant was to furnish seed of the Alaska variety to respondent for the planting of 140 acres of land. The respondent, on his part, was to plant the peas, cultivate, care for, and harvest the crop raised with such seed in a good farmerlike manner, and deliver the peas so raised to the appellant company which was to pay him 1½¢ per pound for all peas raised, less the amount furnished respondent for seed. The contract contained the following provision: "Subject to approval as to land and condition, by Mr. Kennard." Mr. Kennard was the vice-president of appellant company,

in charge of production. Some time between the first and fifteenth of April, 1933, respondent interviewed Kennard with reference to the delivery of the seed. In such conversation Kennard told respondent that appellant would not furnish the Alaska variety because of the lateness of the season, the ground not having been prepared for seeding, and because respondent with his equipment would be unable to get the Alaska variety seeded in time. At the same time Mr. Kennard informed respondent that appellant company would furnish him with a variety of peas known as White Canadas, which was a much later variety. It appears that the appellant company had had wide experience in the planting and growing of peas, and recommended that the White Canada variety be planted fifty pounds to the acre. After some protest by respondent he finally agreed to plant the White Canada variety, and appellant company furnished him with sufficient seed to plant 140 acres at fifty pounds to the acre, but with the equipment respondent had he was unable to sow the peas lighter than sixty-eight pounds to the acre. This left a balance of twenty acres unseeded to peas. The respondent then requested appellant to furnish him with seed for the other twenty acres, but was informed that appellant had no more seed available. Respondent then planted fourteen of the remaining twenty acres in oats.

Respondent instituted this action on the ground that the White Canada variety of peas did not yield as heavily as would the said Alaska variety which appellant company had contracted to furnish, and respondent did not make as much profit from the oats sowed on the fourteen-acre patch as he would have made if appellant company had furnished the Alaska pea seed to sow the remaining twenty acres to be sown; that by virtue of appellant company's failure and refusal to supply sufficient pea seed of the Alaska variety for respondent to properly seed the 140 acres, respondent was damaged in the sum of $1,708.

Appellant filed a general demurrer to the complaint, which was overruled. Appellant answered, and in due time the case was tried to a jury. At the close of respondent's testi-

mony the appellant moved for a nonsuit. This motion was denied, and the appellant rested, then renewed the motion for nonsuit, which was denied. The jury returned a verdict in favor of respondent for the sum of $676, from which judgment this appeal is taken.

Error is predicated upon two grounds: 1. That the court erred in overruling appellant's demurrer, on the ground that the complaint shows on its face that the contract sued on was subject to approval by an officer of the appellant company, to wit, Mr. Kennard, and shows that Kennard refused to approve said writing; upon the further ground that the complaint shows on its face that respondent consented to accept and plant and did accept and plant White Canada peas in lieu of Alaskas. 2. That the court erred in overruling appellant's motion for nonsuit, on the grounds that the evidence shows that the contract was not approved, and that the evidence further shows that the contract to furnish Alaska seed peas was superseded and set aside by subsequent agreement of the parties to substitute White Canada peas in lieu of Alaskas.

The disposition of this case rests upon the determination of but one question: Was there such a modification of the original contract, by the mutual consent of the parties, that the respondent is precluded from suing on such contract as originally made?

■ ■ It is a general rule of law that parties to an unperformed contract may, by mutual consent, modify it by altering, excising, or adding provisions. (13 C. J. 589.) And such modification may be by parol agreement though the contract is in writing. (*American Eagle Fire Ins. Co. v. McKinnon*, 36 Ariz. 409, 286 Pac. 183; *Arkansas Valley Bank v. Esser*, 75 Colo. 110, 224 Pac. 227; *Propst v. William Hanley Co.*, 94 Or. 397, 185 Pac. 766; *Parker v. Weber County Irr. Dist.*, 65 Utah, 354, 236 Pac. 1105.) In some states, however, by statute, a written agreement may be modified by oral agreement only when the oral agreement has been executed. (*Klein Norton Co. v. Cohen*, 107 Cal. App. 325, 290 Pac. 613; *Lish v. Martin*, 55 Mont. 582, 179

Pac. 826; *Walker v. Johnson,* 102 Okl. 9, 227 Pac. 113.) We have no statute which prevents parties to a written contract from modifying the same by subsequent oral agreement.

The pleadings and evidence in this case show that the appellant company, through its agent, Mr. Kennard, informed the respondent that it would not perform the provision of the original contract for the furnishing of the Alaska seed peas. At the same time appellant offered to furnish respondent with White Canada peas. After considerable protest the respondent voluntarily accepted the offer to take the White Canada peas as a substitute for the Alaska seed peas, but did not at such time expressly reserve to himself the right to claim damages for failure to furnish Alaska peas under the original contract. Respondent then took delivery of the substitute seed, planted, harvested and delivered it to appellant company, and we must assume under the record, for it is not shown otherwise, that respondent harvested, delivered and received payment for the peas so raised by the White Canada seed, in exactly the same manner as was provided in the original contract between the parties. We believe that under the pleadings and the evidence it is conclusively shown by the acts of the respondent in accepting the substitute seed as he did, he consented to a modification of the contract as suggested by appellant. The rule of law governing in a case of this kind is stated in 13 C. J., sec. 606, p. 591, as follows:

"One party to a contract cannot alter its terms without the assent of the other; the minds of the parties must meet as to the proposed modification; . . . . The fact of agreement may be implied from a course of conduct in accordance with its existence. So assent may be implied from the acts of one party in accordance with the terms of a change proposed by the other."

In *Snowball v. Maney Bros. & Co.,* 39 Wyo. 84, 270 Pac. 167, 271 Pac. 875, 61 A. L. R. 199, plaintiff and defendant had entered into a contract by which plaintiff was to build a certain portion of a public highway. After completion of

part of the work the plaintiff was notified to discontinue work until certain changes in the plans, specifications and line of the highway, under which the contract had been entered, could be made. The plaintiff then resumed work after the changes had been made, and finished his portion of the work according to the changes. Plaintiff then instituted suit on the original contract for damages alleged to have been caused by reason of the changes made. The supreme court of Wyoming, in announcing the rule that a party continuing to perform after modification of a contract on the other party's demand cannot sue for breach of the first contract by such modification, had this to say:

"There is no sound reason that we know of why the rule should not be applied, when the second contract is oral or implied, and is clearly shown, as well as when it is in writing, for even a written contract may always be changed, modified, or waived in whole or in part by a subsequent one, express or implied. *Williston, supra,* sec. 1828; 6 R. C. L. 915; 9 C. J. 717. If the contention of plaintiff, accordingly, were sound (Which we do not think is true, as hereafter more fully shown), that he did not construct the road in question, after the alterations, in accordance with the written contract, then he performed it under an implied contract entirely inconsistent with the written one, and therefore taking its place, for it covered substantially the same subject-matter and the detailed terms and conditions under which the work was done."

We think the rule is aptly stated in *Bailey v. Gordon,* 8 Fed. (2d) 672, 56 App. D. C. 30, in which the court said:

"Where a second contract is made, which operates to rescind a former contract, it is presumed to operate as a mutual release of the parties and constitute a general and final settlement of their differences. The rule is clearly stated in 12 Corpus Juris, 364, as follows: 'It will be presumed that a general settlement includes all matters in controversy and all demands existing at the time between parties; and while this presumption is not conclusive in its character, it imposes on the party claiming that certain items

were not included in the settlement the burden of establishing such fact by a fair preponderance of evidence.'

"It follows that, if the plaintiff had desired to avail herself of proof to remove this presumption, there should have been an allegation in the declaration to the effect that, when the final agreement was made, she reserved to herself the right to claim damages for the breach of the former contracts. Not having done this, the declaration was fatally defective, and the demurrer was properly sustained." (See, also, *Juniper Lumber Co. v. John M. Nelson, Jr., Inc.,* 133 Va. 146, 112 S. E. 564, 24 A. L. R. 247; *Talbot v. Anderson,* 80 Utah, 436, 15 Pac. (2d) 350; *Schwab Safe & Lock Co. v. Snow,* 47 Utah, 199, 152 Pac. 171; *Mascall v. Erickson,* 131 Or. 509, 283 Pac. 2; *Farmers' Cotton Oil Co. v. Brint,* 184 Ark. 1193, 40 S. W. (2d) 789.)

Respondent did not allege in his complaint at the time the contract was modified, or the new contract entered into, that he reserved to himself the right to claim damages for the breach of the original written contract, nor was there any evidence introduced from which a reasonable inference could be drawn that such reservation was made.

Appellant makes the contention that the question of whether a modification of the contract by the parties was effected, should not have been submitted to the jury, but that it was the duty of the court, as a matter of law, the evidence being undisputed, to determine that question. Respondent makes answer to this contention stating that such question was properly submitted to the jury, and cites us to the case of *Endriss v. Belle Isle Ice Co.,* 49 Mich. 279, 13 N. W. 590. In that case the trial court, as a matter of law, determined the question as to whether there had been a modification of the contract. On appeal the judgment was reversed, the appellate court stating that the circumstances raised a question for the jury, and that it should have been left to them to construe and weigh the evidence, and decide between the conflicting theories. The evidence was not set out in the opinion, but apparently there was such a conflict in the evidence that the question should have been properly

submitted to the jury. However, in this case there is no conflict or dispute in the evidence. The pleadings and evidence both show affirmatively sufficient facts, without controversy, to warrant the trial court in determining, as a matter of law, that there was a modification of the original contract. In the sixth syllabus to *W. T. Rawleigh Co. v. Van Duyn,* 32 Ida. 767, 188 Pac. 945, it is said:

"Where it is contended that a contract has been modified, and the evidence with relation to such contention is undisputed and unambiguous, it is the duty of the court to announce as a matter of law as to whether a modification of the contract was effected." (And see *Freeman v. W. T. Rawleigh Co.,* 104 Okl. 160, 230 Pac. 900; *Southern Pacific Land Co. v. Dickerson,* 188 Cal. 113, 204 Pac. 576; *Conway v. Monidah Trust,* 52 Mont. 244, 157 Pac. 178.)

From what has been said we conclude that the complaint did not state sufficient facts to constitute a cause of action against appellant. But even if it had, the evidence was insufficient to justify the court in submitting the case to the jury, and the motion for nonsuit should have been granted.

Judgment reversed, with costs awarded to appellant.

Holden, J., and Johnson, D. J., concur.

Budge, C. J., and Givens, J., dissent.